## S. D. PARKER et al. *v.* B. T. SCOGIN et al.

A judgment confessed by the president of the police jury, is *res adjudicata* against each individual tax payer.

In the absence of an appeal or action of nullity, no irregularity in the form of proceeding before the district court can be inquired into after the lapse of one year. When the police jury has been regularly cited or made its appearance, no inquiry can be entertained after the lapse of that period, as to whether the power to confess judgment was or was not formally conferred by sufficient authority.

The parish tax collector is the proper person to collect the tax levied to pay the subscription of stock of a railroad company.

APPEAL from the District Court of the parish of Caddo, *Land*, J.
*Wright*, for plaintiffs and appellants.   *Crain & Nutt*, for defendants.

MERRICK, C. J.   The plaintiffs are sundry land holders and tax payers of the parish of Caddo. They have brought this action to restrain *B. T. Scogin* from collecting the tax to meet two instalments of the subscription of $100,000 of stock subscribed by the police jury of the parish of Caddo to the Vicksburg, Shreveport and Texas Railroad Company. Their action was sustained as to the second instalment.

We quote for a statement of the facts (preceding the subscription of stock) the following from the elaborate opinion of our brother of the District Court:

"The police jury of the parish of Caddo on the 19th day of October, A. D. 1852, passed an ordinance for the subscription of one hundred thousand dollars to the stock of the Vicksburg, Shreveport and Texas Railroad Company. This ordinance contained a statement of the number and amount of the shares proposed to be subscribed, to wit: four thousand shares at twenty-five dollars per share. It also levied a tax of two per cent. annually, for five years, on the landed estate of the parish, to pay the amount of the subscription of one hundred thousand dollars. The ordinance further provided that it should be submitted to the voters of the parish, on whose property the tax mentioned was proposed to be levied, for their approval and ratification, at an election to be

held at the different precincts in the parish, for that purpose, on the first Monday in February, 1853. It further provided that said election should be held by the commissioners of general elections, and that the returns should be made to the clerk of the police jury within six days after the election. The ordinance also provided that on the same day of the election, or as soon as the returns should be made, that the clerk and president of the police jury, in the presence of all such persons as should choose to attend, should, at the court house, ascertain the state of the vote, and declare the same; and that if in the affirm-ative, then to declare the tax (ordinance) to have the force of law. The ordinance contained, besides, other provisions unnecessary to enumerate in this place.

The election did not take place on the first Monday in February, 1853, as directed by the ordinance, for the reason (stated in Col. Battle's testimony) that notice of the same had not been published for the length of time required by law.

' The police jury afterwards, on the 7th day of February, 1853, by ordinance, directed the election to be held on the 14th of March, 1853, or on such other day as the president of the police jury should designate and appoint; and by virtue of this ordinance the election was advertised to be held on the 19th day of March, 1853, by order of the president of the police jury, but did not take place for the reason (stated by Col. Battle) that there was a misdescription in the advertisement of the name and style of the railroad company.

The election was again ordered by the president of the police jury, and ad-vertised to take place on the 16th day of April, 1853, and was accordingly held on that day, having been preceded by a notice for thirty odd days, published in the Caddo Gazette, a newspaper published in the parish of Caddo.

And on the 19th day of April, 1853, the clerk and president of the police jury proceeded, in the presence of witnesses and other persons, to open the returns and to count the votes, when it appeared that two hundred and eleven votes had been cast in favor of the ordinance, and one hundred and fifty-four against it, leaving a majority in favor of the ordinance of fifty-seven votes.

And on the evening of the same day, (19th of April,) after the result of the election was officially known, or on the morning of the next day, the president of the police jury, William Terrell, subscribed to the stock of the Vicksburg, Shreveport and Texas Railroad Company, four thousand shares, at twenty-five dollars per share.

And on the 28th of May thereafter, the president of the police jury made official proclamation of the result of the election in the Caddo Gazette, and declared the said ordinance of the police jury of the 19th of October, 1852, to have the force and effect of law."

In November of the same year the police jury passed a resolution, wherein, after reciting that a majority of the legal voters had not accepted the resolution to subscribe the stock to the railroad company, they ordered a new election to be held to test this, as they called it, "momentous question." The Vicksburg, Shreveport and Texas Railroad Company instituted in the District Court for the parish of Caddo, in May, 1854, an action praying for judgment against the police jury of the parish, for the sum of one hundred thousand dollars, in five annual instalments, and interest, and inasmuch as the police jury had failed to assess and collect the tax, that the sheriff be ordered to assess and collect the tax on the real estate of the parish of Caddo, under the pro-visions of the Act of April 29, 1853.

This suit was commenced by citation. The police jury, however, having obtained a compromise by which a portion of the interest was remitted, and the terms for the payment of the instalments deferred, passed a resolution authorizing their president to confess judgment, in. conformity with the compromise. The confession of judgment was filed, and a judgment rendered thereon the 30th day of May, 1854, decreeing the payment of the one hundred thousand dollars, by instalments payable at the period, and bearing the interest agreed upon. It was further decreed that an assessment of taxes should be made and a collector appointed by the police jury to collect the taxes, and in the event of failure on the part of the police jury to make the appointment, a mandate should issue, charging the sheriff with the duty of assessing and collecting the tax.·

The police jury took no appeal from the judgment thus rendered, and no action of nullity was brought to rescind it.

The judgment of the lower court having been adverse to the plaintiffs, as to one instalment, on their appeal they present to us for our consideration the following questions, viz:

"1st. Had *Mr. B. T. Scogin*, parish tax collector, authority to collect the railroad tax?

"2d. Is the judgment, confessed by the president of the police jury, *res judicata* against each individual tax payer?

"3d. Is the Act of 12th March, 1852, constitutional?

"4th. If the Act is constitutional, can less than a majority of the whole number of the voters, land holders of the parish, approve and ratify the ordinance and subscriptions made under it?"

It is evident that an affirmative answer to the second question presented by the appellants, will render the discussion of the third and fourth unnecessary. We will, therefore, consider this question out of the order presented.

The nature of municipal corporations is such, that they, of necessity, represent all the citizens of the territory or district submitted to their jurisdiction by classes, as well as collectively. As it would be impossible to conduct a proceeding against each and every inhabitant of a parish, they are represented by their police jury. If the police jury can represent the inhabitants collectively, it can represent them by classes for the same reason. So the Legislature of the State not only represents the electors who have chosen the representatives composing the Legislature, but also all other classes composing the State, such as women, minors, naturalized citizens, denizens and aliens within its limits. So of a city. The municipal authorities, while they represent the whole body of the citizens within the limits of the city, represent the same by classes; they represent the merchants, the draymen, the laborers, the mechanics, the physicians, the lawyers and the laboring men of all classes. So the police jury represents the tax payers by classes; those who pay taxes upon land as well as those who pay taxes upon slaves, upon movables, upon capital, upon employments, or those who pay merely the poll tax. A judgment, therefore, against the police jury, as the representative of a single class, must be as obligatory upon that class as a like judgment would be against the police jury as the representative of the whole. The effect of such judgment is, in this respect, precisely as that rendered against the administrator of a succession. It, the judgment against the administrator, binds not only the heir of full age, who is *sui juris*, but the married woman, the emancipated minor, the minor

PARKER
*v.*
SCOGIN.

heir, whether with or without a tutor. The judgment of the District Court must, therefore, be held obligatory upon the plaintiffs. In the absence of an appeal or action of nullity, it is obvious that no irregularities in the form of the proceeding before the District Court can be inquired into after one year has elapsed from the rendition of the judgment. If the police jury was regularly cited, or made its appearance, no inquiry can now be entertained whether the power to confess judgment was or was not formally conferred by sufficient authority.

In the case of the *Vicksburg, Shreveport and Texas Railroad Company* v. *the Parish of Caddo*, decided by this court last year, it was held that the parish tax collector was the proper person to collect this tax. We discover no error in the conclusion of the lower court that *B. T. Scogin* had authority to collect the tax under the mandate issued to his predecessor in office.

Judgment affirmed.

SPOFFORD, J., declined taking a part in the decision of this case.

BUCHANAN, J. My views of the unconstitutionality of the law of March 12, 1852, providing for the subscription by parishes and municipal corporations to the stock of corporations undertaking works of internal improvement, as expressed in my dissenting opinion in the case of the *City of New Orleans* v. *Mrs. Grailhe*, 9th Annual Report, are still unchanged.

But I think the plea of unconstitutionality of the law which authorized the police jury of Caddo to levy the tax in question, like any other defence which might have been pleaded before judgment, is barred by the exception of *res judicata*, founded upon the judgment confessed by the parish of Caddo, in favor of the Vicksburg, Shreveport and Texas Railroad Company. The plaintiffs were parties to that suit, collectively with all the other landowners in the parish of Caddo, by their mandatories, the police jury of Caddo.

I concur in the decree pronounced by the Chief Justice.